NO. 12-03-00301-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
EDWIN LEE SMITH,                                       §                 APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Edwin Lee Smith was convicted for aggravated sexual assault of a child and
sentenced to forty years of imprisonment. In two issues, Appellant challenges the legal and factual
sufficiency of the evidence. We affirm.
 
Background
            Appellant was charged by indictment with aggravated sexual assault of a child in violation
of Section 22.021 of the Texas Penal Code. Specifically, the indictment charged Appellant with
intentionally or knowingly causing the penetration of the anus of A.W. by his finger, thumb, sexual
organ, or an object unknown to the grand jury. Appellant pleaded “not guilty” and tried his case to
a jury. 
            At trial, Veronica White, A.W.’s mother, testified that A.W., a female child, was fourteen
months old at the time of the offense. On January 18, 2003, the family was temporarily living with
a friend, Brandi Hulsey, at Hulsey’s apartment. It was close to midnight when White gave Hulsey
a ride to her former workplace to retrieve her belongings. They left A.W. and Hulsey’s eleven-month-old son, E.H., with Appellant. Hulsey and White then picked up a pizza and returned to
Hulsey’s apartment in the early morning of January 19. They were gone less than an hour. 
            Upon entering the apartment, White testified that Appellant “jumped” from the kitchen
doorway into the living room. He then sat on the sofa and began watching television. White and
Hulsey sat down as well. White noticed blood on a pillow that was lying on the sofa and asked
Appellant about it. Appellant told White that he had hit his head on the refrigerator door. After five
to ten minutes, White got up and walked down the hall. She heard E.H. crying. She entered E.H.’s
room, where A.W. was also staying. Both children were in the baby bed. She changed E.H.’s diaper
and gave him a fresh bottle. 
            White then turned her attention to her daughter. A.W. was not making a sound, but tears
were in her eyes and she was lying “rolled up” into a “ball.” White checked her diaper. When she
opened the diaper, White saw that A.W.’s “bottom” was split open from her vagina to her anus. 
White immediately closed the diaper. Believing that Appellant had sexually assaulted A.W., she
screamed at him, asking him what he had done. White then ran upstairs to borrow a neighbor’s
phone to call 9-1-1.    While White was on the phone with the 9-1-1 operator, Appellant followed
her around Hulsey’s apartment, instructing her to tell the operator that A.W. had fallen. As she was
talking to the operator, White noticed that A.W. was not wearing the outfit she had been wearing
when White left the apartment. Instead, she was dressed in only her diaper. White also realized the
diaper A.W. was wearing had been recently placed on her because the blood was not yet absorbed
into the diaper fibers. She noticed that A.W. had been bathed. The bathtub was still wet, the rug by
the tub was damp, and A.W.’s clothing was lying on the bathroom countertop.
            After the paramedics arrived and examined A.W., they transported A.W. and White to East
Texas Medical Center (“ETMC”). Eric Roberts, the senior paramedic, testified that he observed the
blood in A.W.’s diaper, but that he did not treat the injury. 
            Elaine Craig, a registered nurse at ETMC, testified that A.W.’s injuries were the worst she
had seen in her twenty-five years of experience. Carol Watkins, another nurse at ETMC with more
than twenty years of experience, performed the rape kit on A.W. Both nurses testified that A.W.’s
injuries were consistent with sexual assault and not a fall.
            The ETMC emergency room doctor, Evans Smith, examined A.W. At trial, Dr. Smith
described A.W.’s injuries as a “ripped rectum” that caused her to lose control of her sphincter. He
believed her injuries were caused by a sexual assault. Because A.W.’s injuries were beyond his
capabilities, he called Dr. Stefan Thiele, a surgeon on staff at ETMC. 
            Dr. Thiele testified that after examining A.W., he had no doubt that she had been sexually
assaulted. Based on the severity of her injuries, Dr. Thiele believed he could not properly address
her needs. Thus, he ordered that A.W. be transported via helicopter to Children’s Medical Center
(“Children’s”) in Dallas. 
            Upon A.W.’s arrival in Dallas, Dr. Phillip Guzzetta, Jr., a pediatric surgeon at Children’s and
a professor at the University of Texas Southwestern Medical University, examined A.W. Dr.
Guzzetta stated that A.W. had severe rectal lacerations to the front of the anus and behind the vagina. 
These lacerations were from an object pushing into A.W.’s body repeatedly with force. A.W.’s skin
and the underlying muscle were torn. He believed that A.W. had been penetrated by a penis. He
stated that a finger or a thumb would not have caused such damage. Dr. Guzzetta also said that
A.W.’s injuries could not have been caused by a fall from a normal baby bed or a twin bed.
            Jon Thornhill, a detective with the Tyler Police Department, interviewed Appellant. 
Appellant initially told Thornhill that he had gone to E.H.’s room twice while White and Hulsey
were gone. The first time he went because the babies were restless and rattling the crib. According
to Appellant, he went in the room a second time because he heard a thump on the floor. He said that
upon entering the room, he found A.W. on the floor after apparently having fallen out of the crib. 
Appellant later said that A.W. had been on the twin bed and fallen from it while he was tending to
E.H. 
            Thornhill then conducted the first in-jail interview on videotape. The videotape showed
Appellant saying that A.W. fell from the bed and Appellant caught her within ten to twelve inches
from the ground with his left thumb. Thornhill interviewed Appellant in a second in-jail video tape. 
The second videotape revealed that Appellant indicated he caught A.W. with his right thumb as she
was falling.
            The trial court admitted a washcloth taken from ETMC over Appellant’s objections. There
was some confusion from the nurses’ testimony as to which one of them wiped A.W. with the
washcloth and which one placed it into an evidence bag. However, Dawn Jacobson, a forensic
analyst at Orchid Cellmark in Dallas, testified that she conducted tests on the washcloth. Her tests
revealed a positive result for semen in one area of the washcloth and a negative result in another area
of the washcloth. She did not find any sperm in the semen stain so she could not match the semen
to Appellant’s DNA profile. Jacobson indicated the tests revealed the semen from the washcloth was
a very diluted sample. She also stated that the washcloth tested negative for blood. 
            The trial court also admitted the underwear Appellant was wearing on January 19 into
evidence. The front of the underwear tested presumptively positive for both blood and semen. The
blood and semen were from the same stain in the underwear. Robert Hilbig, a criminalist working
in the serology/DNA department of the Garland Department of Public Safety lab, testified that he
conducted tests on the stain. The tests revealed that sperm found in the stain was Appellant’s sperm. 
However, the blood in the stain was A.W.’s.  
            At trial, the jury found Appellant “guilty” and sentenced him to forty years of imprisonment. 
Appellant now appeals from that conviction and sentence.
 
Sufficiency of the Evidence
            In two issues, Appellant challenges the legal and factual sufficiency of the evidence
supporting the jury’s finding that he penetrated the anus of A.W. Specifically, Appellant argues that
the hospital washcloth that was used to wipe A.W. was erroneously admitted because it could not
be conclusively linked to either the victim or Appellant. Appellant maintains that without the
washcloth, the State’s proof was both legally and factually insufficient. We disagree.
Standard of Review
            In reviewing a legal sufficiency challenge, the appellate court examines all of the evidence
in the light most favorable to the judgment to determine whether a rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979)). The jury is the exclusive judge of (1) the facts, (2) the
credibility of the witnesses, and (3) the weight to be given to the testimony of each witness. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). As fact finder, a jury may reject
all or any part of a witness’s testimony. Id. A successful legal sufficiency challenge results in the
rendition of an acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S.
Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). 
            In conducting a factual sufficiency review, the appellate court must review all of the
evidence, but not in the light most favorable to the prosecution. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). We must determine whether a neutral review of all the evidence, both for
and against the challenged finding, demonstrates that a rational juror could find guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence is
factually insufficient when evidence supporting the verdict, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt. Id. Evidence is also factually insufficient
when contrary evidence is so strong that the beyond-a-reasonable-doubt burden of proof could not
have been met. Id. at 484-85. In performing a factual sufficiency review, we defer to the fact
finder’s determinations, including those involving the credibility and demeanor of witnesses. Id. at
481. The only question to be answered in a factual sufficiency review is whether, considering the
evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable
doubt. Id. at 484. 
Applicable Law and Discussion
            A person commits the offense of aggravated sexual assault of a child if the person, by any
means, penetrates the anus or sexual organ of a child who is younger than fourteen years of age and
not the person’s spouse. Tex. Pen. Code Ann. § 22.021 (a)(1)(B), (a)(2)(B) (Vernon 2003). In
addressing the sufficiency of the evidence to establish the penetration of A.M.’s anus, we will
assume arguendo that the washrag was improperly admitted as Appellant contends. Nonetheless,
in our review, we must consider all evidence in the record, whether admissible or inadmissible. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (legal sufficiency review); Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (factual sufficiency review).
             Legal Sufficiency
            At trial, Dr. Smith testified that it was obvious that A.W. had been sexually assaulted. Dr.
Thiele also had no doubts that A.W. had been sexually assaulted. Dr. Guzzetta testified that A.W.’s
injuries were not caused by a fall, a thumb, or a finger. He believed that A.W.’s extensive injuries
were caused by a penis. The medical evidence alone supports the legal sufficiency of Appellant’s 
conviction. See Beckham v. State, 29 S.W.3d 148, 152 (Tex. App.–Houston[14th Dist.] 2000, pet.
ref’d) (finding sufficient legal evidence when doctor testified that examination of child revealed
abnormalities that would have resulted from sexual abuse). Therefore, a rational trier of fact could
have found beyond a reasonable doubt that Appellant penetrated A.W.’s anus. Appellant’s legal
sufficiency argument fails; consequently, we overrule his first issue.
            Factual Sufficiency
             In addition to the evidence summarized above, the record also contains evidence that is
favorable to Appellant. At trial, Detective Thornhill testified that Appellant denied assaulting A.W.
and gave at least three different stories as to what happened in the early morning hours of January 19. 
In each story, Appellant contended that A.M.’s injuries were the result of an accident. Moreover,
the semen on the washrag could not be matched to Appellant’s DNA profile. 
            Although this evidence is favorable to Appellant, the jury accepted the State’s version of the
facts and found against Appellant. In our evaluation, we should not substantially intrude upon the
jury’s role as the sole judge of the weight and credibility of witness testimony. See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We have conducted a neutral review of all the
evidence, both for and against the finding. The record does not reveal any evidence causing us to
conclude that the proof of guilt is too weak to support the finding of guilt beyond a reasonable doubt. 
Nor does the record reveal contrary evidence so strong that guilt cannot be proven beyond a
reasonable doubt. Thus, we hold that the evidence is factually sufficient to support the jury’s
finding. Consequently, we overrule Appellant’s second issue.
 
Disposition
            Having overruled Appellant’s two issues, the trial court’s judgment is affirmed.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
Opinion delivered December 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, 

(DO NOT PUBLISH)